Filed 5/10/16  P. v. Alkhafaji CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D067702 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE332398) |
| ALI LATEF ALKHAFAJI, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, John M. Thompson, Judge.  Affirmed.

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swensen and Felicity A. Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Ali Latef Alkhafaji (Appellant) of one count of evading a police officer with reckless driving (Veh. Code, § 2800.2).[1] Appellant admitted one serious/violent felony prior conviction (Pen. Code,[2] § 667, subds. (b)-(i)). He also admitted three prison priors (§ 667.5, subd. (b)).

The court denied a motion to strike the serious/violent felony prior conviction. The court did strike one of the prison priors and sentenced Appellant to a determinate term of six years in prison.

Appellant appeals contending his trial counsel was ineffective for failure to object to a statement by one of the parole officers that they were aware Appellant had fled from police before. Given the state of the record we will find Appellant has not met his burden to show trial counsel was ineffective. Accordingly, we will affirm the judgment.

STATEMENT OF FACTS

The facts of the offense are not in dispute. Accordingly, we will adopt Appellant's statement of facts as an accurate and helpful summary of the evidence.

A warrant was issued for Alkhafaji's arrest by his parole agent. A parole agent, Chris Morris, cross-sworn as a member of the U.S. Marshal's Fugitive Task Force, conducted an investigation seeking information on Alkhafaji's likely whereabouts. Surveillance was conducted at a location of a drug treatment program (McAlister

---

[1]    Appellant was also convicted in two other pending cases tried immediately before this case. Appellant has not appealed from those convictions thus we will not discuss them in this opinion.

[2]    All further statutory references are to the Penal Code unless otherwise specified.

Institute) in a building at 1100 Johnson Avenue in El Cajon. Alkhafaji's girlfriend, Dasha Elkerton, was on probation and enrolled in the program there. On July 30, Morris worked at that location in plain clothes with fellow agent Steve Cornwell. Morris observed Elkerton outside of the building in an area of trees, while she was on a break from the program.

On a hunch Alkhafaji would come to the area to pick up Elkerton at the end of the treatment session, Morris returned with reinforcements. Morris parked his car in the parking lot. A purple or maroon Mitsubishi backed into the adjacent parking stall. Alkhafaji was seated in the driver's seat, and he kept the motor running. Morris was concerned that Alkhafaji might flee if he realized he was under surveillance. Morris turned off his radio, and removed his weapon and badge from his person to avoid Alkhafaji possibly identifying Morris as a law enforcement agent.

Morris got out and went into a graphic design shop because it was the shop closest to where he parked his vehicle that was open for business. As Alkhafaji remained seated in his vehicle, Morris called Cornwell and alerted him to Alkhafaji's presence, and provided a description and location of the Mitsubishi. Alkhafaji drove away. The agents initially decided to follow Alkhafaji, but not having enough reinforcing officers to back them up for an arrest, it was decided to wait for more officers, and hope that Alkhafaji would return to pick up Elkerton.

Officers from the El Cajon Police Department were summoned to assist, as were agents from the California Parolee Apprehension Team, and California Highway Patrol, as Morris maintained surveillance from the graphic design business. Morris thought the

3

plan was to wait for Alkhafaji to park his vehicle, and then black and white patrol vehicles would enter from each entrance and park as close as possible to Alkhafaji, and arrest him. Gathered two blocks away, officers from various agencies devised a plan to simply block the two entrances of the parking lot so that Alkhafaji could not exit the parking lot.

At the time the program meeting concluded, Elkerton came out of the building and went to the same area where she earlier rested on her break. She seemed to be communicating on her cell phone, and pacing back and forth. Alkhafaji was observed traveling toward the direction of the McAlister Institute. Alkhafaji drove into the L-shaped parking lot, entering by way of the Johnson Avenue driveway. He drove past the graphic design business, and headed toward the Steele Street driveway. Rather than parking, Alkhafaji stopped his vehicle in the aisle between parking spaces to let Elkerton get into his vehicle. Morris directed the officers in the black and white patrol vehicles to "move in." After Elkerton got into the Mitsubishi, Alkhafaji headed toward the Steele Street driveway.

El Cajon police officer Brandon Stanley was partnered with Officer Kenneth Gray. Stanley drove a Ford Crown Victoria marked El Cajon police vehicle, but it was a "slick top" (lights and sirens not on the roof of the vehicle). Stanley entered the parking lot ahead of his sergeant. Sergeant Winslow drove a black and white Chevy Tahoe SUV marked police vehicle with overhead emergency lights, and at least one forward-facing red light. Winslow positioned the SUV police vehicle across the Steele Street driveway

4

to block Alkhafaji from exiting. Stanley stopped his vehicle nose to nose with the Mitsubishi.

Officers Stanley and Gray exited and stood behind their doors. They drew their sidearms in an attempt to effectuate a "hot stop" arrest. They yelled loudly at Alkhafaji to turn the vehicle off, and get out of the vehicle. Winslow positioned his vehicle in a gap between the slick top and parked cars where Alkhafaji might be able to drive past the slick top. Alkhafaji made eye contact with Stanley and Gray and ducked down. He revved the motor, put his vehicle into reverse gear, and backed up rapidly through the populated parking lot into an area of trees. The Mitsubishi did not strike any tree, object, or person.

As Stanley and Gray got back into their vehicle, Winslow drove the marked SUV around the slick top and followed Alkhafaji nose to nose, with overhead lights and siren activated. Alkhafaji stopped briefly as he switched to a forward gear and turned to the left driving toward the other driveway. There was screeching of tires, and a collision between the patrol SUV and the Mitsubishi as Alkhafaji proceeded while Winslow attempted to block Alkhafaji. There was property damage to the police SUV caused by the collision.

Alkhafaji drove rapidly through the parking lot toward the Johnson Avenue driveway, estimated speed between 30 and 35 miles per hour, seeming to have the accelerator pedal "floored." Winslow followed with lights and siren activated, while Stanley and Gray followed behind Winslow with the forward facing LED lights of the slick top activated. Parole agent Morris was in the parking lot with his firearm drawn as

5

he repeatedly yelled, "Let me see your hands."  Alkhafaji made eye contact with Morris, and hunkered down low in his seat as he attempted to drive away from Morris.  Morris loudly shouted repeatedly for Alkhafaji to "stop."  Alkhafaji sped away through the parking lot toward the Johnson Avenue driveway which lay between two landscaped areas.  If Alkhafaji had not maneuvered his vehicle to avoid Morris, Morris probably would have shot him to prevent being struck by the Mitsubishi.

A CHP vehicle was parked at an angle across most of the Johnson Avenue driveway.  CHP Officer Jerry Page was putting his K-9 partner into the back seat, and he stood in between his vehicle parked across the driveway, and the oncoming Mitsubishi driven by Alkhafaji.  The Mitsubishi sped toward one end of the patrol vehicle where there was a gap between the vehicle and the edge of the driveway.  Alkhafaji continued to accelerate.

As Alkhafaji approached Officer Page, Page fired four gunshots.  Three bullets penetrated the Mitsubishi's windshield.  Alkhafaji was wearing a hat with a flat bill.  He wore the hat on the back of his head with the bill pointing up.  It would be later discovered that a bullet pierced the hat bill.

Stanley heard the sound of another collision as Alkhafaji drove his vehicle around the CHP vehicle, and through a planted landscape area, over the curb, and out onto Johnson Avenue.  There was property damage to the planter, curb, and street surface.  Vehicles traveling in the traffic lanes stopped to avoid collisions, as Alkhafaji crossed all four lanes of the roadway, and entered the driveway for industrial buildings on the other side of Johnson Avenue.  He drove away westbound, with the El Cajon Police

6

Department and CHP patrol vehicles in pursuit, followed by undercover agents in unmarked vehicles. Alkhafaji was pursed through the industrial park, across Vernon, and into a parking lot for commercial buildings off of Vernon.

When the Mitsubishi hit the street from the curb at Vernon, the glass broke out of the driver's door. Alkhafaji progressively increased speed as he was pursued. Alkhafaji parked the Mitsubishi in the parking lot of a warehouse type of business. He parked behind a gate, which obscured view of the Mitsubishi; then he fled on foot. After attempting to call Alkhafaji out from the Mitsubishi to no avail, officers walked around the gate and discovered that Elkerton was still in the Mitsubishi alone. The driver's door was open, and Alkhafaji left behind the hat that he had been wearing.

Numerous employees from the business were present, and some pointed out the direction Alkhafaji ran. A perimeter was set up and a slow methodical search was conducted. All available units from the city and county responded, and additional K-9 officers were deployed as well as a helicopter. Alkhafaji was found approximately four hours later by a K-9 officer searching in an area flagged by reporting parties. When found, Alkhafaji was hiding underneath a parked truck in an MTS bus yard on Gable Way.

DISCUSSION

During the testimony of parole agent Chris Morris he explained the planning that went into the attempt to apprehend Appellant, for whom a warrant had been issued. Morris explained the numbers of officers and plan to watch Appellant without alerting him was based on his review of the record that Appellant was likely to flee. There was

7

no objection to the answer. Later the prosecutor said in argument that Appellant had a history of running from police, again without objection. Prior to trial, defense counsel had been successful in excluding six prior incidents where Appellant had fled from police.

Appellant contends his trial counsel was ineffective and the two references amounted to inadmissible "propensity evidence." He claims those statements denied him a fair trial and counsel was indisputably ineffective for failing to object. As we will explain, this record does not explain why counsel did not object. Further, defense counsel appeared to have a defined strategy to convince the jury Appellant fled because he was afraid of the officers who were shooting at him and that he was not reckless in his driving. Given the overwhelming evidence of wild, reckless driving to avoid capture by police in marked vehicles with emergency lights activated, we are satisfied Appellant has not shown prejudice, even if we assumed an error on the part of trial counsel.

## A.  Legal Principles

When a defendant claims trial counsel has been constitutionally ineffective the defendant must make the showing required by *Strickland v. Washington* (1984) 466 U.S. 668 (*Strickland*). *Strickland* requires that the defendant show trial counsel's performance fell below acceptable standards, in other words counsel erred by commission or omission. In addition to showing error, the defendant must show that in the absence of the error it is reasonably likely that a different result would have been reached. (*Id.* at p. 687.)

In reviewing claims of error by trial counsel, where there is an unexplained omission, an appellant can meet the *Strickland* standard only "if the record on appeal

8

demonstrates there could be no rational tactical purpose for counsel's omissions." (*People v. Lucas* (1995) 12 Cal.4th 415, 442.)  When we evaluate the performance of trial counsel we are required to presume, in the absence of other evidence, that counsel's conduct falls within the wide range of professional assistance.  (*People v. Vines* (2011) 51 Cal.4th 830, 876.)

Even if an error is discovered, an appellant must meet the *Strickland* prejudice standard.  "[Appellant] must carry his burden of proving prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors and omissions of counsel." (*People v. Williams* (1988) 44 Cal.3d 883, 937.)

In *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 267-268 the court noted that it is often difficult to tell, from a silent record, whether the failure by counsel to take some action constitutes ineffective performance.  As the court observed in such cases it is often necessary to resolve such issues on habeas corpus, where a record can be developed.

## B.  Analysis

Starting with the question of why counsel did not object, we of course do not have an answer in this record.  We do know the parole and police authorities assembled a formidable team of multiple officers, agencies and even a helicopter in their effort to apprehend Appellant.  Even without the parole agent's statement, it would appear they thought him likely to flee, which of course he did upon confronting police.

More importantly, however, it appears the defense tactic was to appeal to the jury on the specific intent issue by contending Appellant fled, because he feared the gun-toting, and shooting police.  Indeed, his view was a reasonable person might do that.

9

Counsel argued Appellant was cautious in his efforts to escape, thus he did not commit felony evasion, because he was not reckless. That the tactical decision did not work, does not render the approach of defense counsel unreasonable. In any event, there is nothing in this record to indicate that trial counsel was not competent, or well prepared. If such facts exist, they will have to be developed in an appropriate habeas proceeding.

Finally, the record before us, including video of the pursuit and the cars into which Appellant crashed, presents overwhelming proof of guilt. We find nothing in this record that could possibly support a finding that a different result would have been likely if the two statements had not been admitted. Appellant has not met his burden of showing ineffective assistance of counsel under the Sixth Amendment.

## DISPOSITION

The judgment is affirmed.

———————————————————
HUFFMAN, J.

WE CONCUR:

———————————————————
McCONNELL, P. J.

———————————————————
NARES, J.

10